John C. McElroy v. Andrew J. B. Keily.

PROVIDENCE—MARCH 29, 1905.

Present: Douglas, C. J., and Dubois, J.

(1)  *Mechanic's Lien.  Separate Liens for Separate Estates Under Joint Contract.*

Where A., a sub-contractor, furnished materials and labor in the erection of two dwelling houses on land belonging to B. under a single entire contract with C., who was the contractor:—

*Held,* that A. should file a separate notice of his intention to claim a lien upon each house and a separate account for each house of the material furnished and used in it.

Petition for Mechanic's Lien.  Heard, and petition dismissed.

Douglas, C. J.  The petitioner furnished plumbing materials and labor in the erection of two dwelling-houses on land belonging to the respondent, under a single entire contract for the sum of $1,600, with John C. Mitchell & Son, who were the contractors to build the houses.  The houses were exactly alike but were not joined together in a block, but separated and adapted to be occupied each with a separate curtilage. The land is described by the petitioner as "that tract of land on the northwest corner of Knight and Brighton streets, . . . comprising lots number 9, 28, and 29" on a recorded plat mentioned, conveyed to respondent "by deed of Bartholomew Keiley, dated November 28, 1902," and also "that portion of lot No. 30 on said plat conveyed to respondent by deed of Harriet A. Wellman, dated August 27, 1902."

The petitioner claims a joint lien on both houses and all the land under an entire account of all the materials furnished for both houses without discrimination, which he filed as the commencement of legal proceedings.

(1)  The respondent contends that the petitioner is not entitled to a lien in that, inasmuch as the two houses are not "one building," in the contemplation of the statute, he should have filed a separate notice of his intention to claim a lien upon each

house and a separate account for each house of the material furnished and used in it, which he has not done.

The language of the statute applying directly to the position of the petitioner is (Gen. Laws R. I. cap. 206):

Sec. 1. "Whenever any building . . . shall be constructed . . . by contract with or request of the owner thereof, such owner being at the time the owner of the land on which the same is, . . . such building, . . . together with the said land, shall stand pledged for all the work done in the construction . . . of such building . . . and for the materials used in the construction thereof . . . which have been furnished by any person," &c.

Sec. 5. "No person who shall . . . furnish materials to be used in the construction . . . of any building . . . without written contract . . . shall have any advantage of any lien therefor created by this chapter unless he shall commence legal process for enforcing the same in manner hereinafter provided, . . . and provided further, that no lien shall attach for materials furnished unless the person furnishing the same shall . . . give notice in writing to the owner of the property to be affected by the lien (if such owner be not the purchaser of the materials) that he intends to claim such lien, and shall . . . place a copy of said notice on record . . . in a book kept for that purpose."

Sec. 7. "The commencement of legal process to enforce the liens hereby created shall be the lodging the account, or demand for which the lien is claimed, in the office of the town clerk of the town or towns in which the building . . . . is situated, with notice to what building . . . and land and to what and to whose estate in the same the said account or demand refers, except in the city of Providence where the same shall be lodged in the office of the recorder of deeds in said city, and the said clerk or recorder of deeds as the case may be shall record the names of the parties, the amount of the claims and the notice aforesaid, and the exact time of filing the account or demand in his office in a book to be kept for that purpose, but the original account need not be recorded, but shall be kept on file."

Further provisions of the act, it is argued by the defendant, aid us in the construction of these sections.

Thus it is provided, in section 9, that in the petition the building and land shall be particularly described, and in section 16, the court shall determine "how much of said property, and especially how much, if any, and what portions of land under and adjoining the same subject to sale by the provisions of this chapter should be sold," &c.

Section 20 provides that "the word 'land' . . . . shall be so construed as to include so much of the land and its appurtenances under and adjoining such building . . . . as the person constructing the same may choose to describe in his commencement of legal process."

It is evident from the tenor of the whole act that the primary thing to which the lien attaches is the building into which the work and materials enter, and that the extension of the lien to include the land is secondary. In this view each building must be considered and treated as a unit, and each building must be so segregated that it can be considered by itself.

In *Butler* v. *Rivers*, 4 R. I. 38, where work was done on two adjoining estates, belonging to different owners, under a joint contract, it was held that separate proceedings should have been instituted against each estate. The scope of the act as it was in 1856 has been much enlarged since, but the remedy is not altered in its character, and the reasoning of Judge Brayton in that case is applicable to this. The argument is based upon the consideration that this is a proceeding *in rem* and the limits of the *res* are the boundary of the scope of the suit. He says: "Work done or materials furnished to the same owner, if put upon one estate, though done or furnished under the same contract, were not intended to be secured by a lien upon another estate." If so, we can not hold that work done or materials furnished, as in the present case, upon two estates of the same owner, without any contract at all with him—indeed, without his knowledge—can be charged indiscriminately upon both estates. Whatever force we might give to the contention that where an owner had made a contract with one person for the erection of two or more adjacent

buildings he might be considered to have agreed that these buildings, for the purposes of the contract and its enforcement, should be considered as a unit, we have no privity of the parties interested in the present case upon which to found a waiver of the strict terms of the statute.

The courts of the different States have divided into two classes on this subject. By far the larger number have taken the contract as the criterion of unity, including in one lien any number of separate structures which are embraced in one building contract with one owner. And many States have prescribed this plan of proceeding by statute. Others, adhering to the view taken by our own court, have made the intended use and occupancy of the building the rule of discrimination, adhering generally to the words of the statute, but reading the plural for the singular when two buildings are necessarily adapted to be used as one estate. The latter view does not forbid, for example, the inclusion of a block of houses under a continuous roof or a dwelling-house and barn, or a house and fence, in one lien. In our opinion this construction is more likely to do exact justice between the parties than the other. It gives to the owner information of the labor and material alleged to have been expended for his benefit, which he is entitled to have in order that he may verify or contest the claim, and imposes, at the most, only slight additional labor on the petitioner.

We see no reason for departing from a precedent which has been followed so long in Rhode Island.

The petition must be dismissed.

*James M. Gillrain,* for petitioner.

*Harrison A. McKenney and James J. McGovern* for respondent.